IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Frank L. Johnson,<br><br>                  Plaintiff,<br><br>v.<br><br>Builders FirstSource Southeast Group, LLC,<br><br>                  Defendant. | Civil No.: 3:21-cv-02612-SAL<br><br><br>**ORDER** |

    This matter is before the court for review of the Report and Recommendation of the United States Magistrate Judge Paige J. Gossett, made in accordance with 28 U.S.C. § 636(b)(1)(A) and Local Civil Rule 73.02(B)(2)(d) (D.S.C.). [ECF No. 45.] As detailed below, the court adopts the Report as modified and grants Defendant's summary judgment motion.

**FACTUAL AND PROCEDURAL BACKGROUND**[1]

---

[1] Before recounting the facts of the case, the court must resolve an evidentiary issue. Johnson specifically objects to the magistrate judge's factfinding. One basis for his objection is the magistrate judge's allegedly improper reliance on Sharlene Herbert's declaration. [ECF No. 47, at 8.] According to Johnson, Herbert's declaration cannot be considered because it does not satisfy the requirements of 28 U.S.C. § 1746 as it is undated. *Id.* Perhaps recognizing the technical blunder in Herbert's declaration, Builders moved for leave to file an addendum to Herbert's declaration. [ECF No. 48.] This addendum includes a signed statement from Herbert providing she signed the declaration on May 10, 2022. [ECF No. 48-1, at 2.] Herbert signed this statement under the penalty of perjury and attested the facts were correct. *Id.* Johnson unsurprisingly opposes Builders' motion. [ECF No. 52.]

Courts in this district have allowed such substitutions in the past so long as the new document satisfies the statutory requirements. *See Meller v. Wings Over Spartanburg, LLC*, No. 2:15-CV-2094-PMD, 2016 WL 1089382, at *6 (D.S.C. Mar. 21, 2016) (considering a newly filed declaration in place of an older, defective affidavit*); Kobe v. Haley*, No. CA 3:11-1146-TMC, 2013 WL 4067921, at *8 (D.S.C. Aug. 12, 2013) (refusing to strike a revised affidavit which substantially complied with the requirements of 28 U.S.C. § 1746). The court does not see a reason to go against the grain in this case as the newly filed addendum rectifies the only statutory

Defendant Builders FirstSource builds and delivers roof trusses from its facility in Sumter, South Carolina. [ECF No. 29-1, at 2.] Plaintiff Frank Johnson started working at Builders' facility in Colorado in 2000 and transferred to the Sumter facility in 2003. [ECF No. 1-1, ¶ 6.] Johnson worked at the Sumter facility until his termination in 2020 and most recently served as the Supervisor Dispatcher for about eight years. *Id.* ¶ 7. In this role, Johnson made sure all the loads ready for delivery made it out of the facility by assigning drivers trucks and their associated routes; he also ensured the drivers complied with DOT regulations. [ECF No. 41-1, Johnson Depo., 26:15–20, 31:3–16.]

Toward the start of the Covid-19 pandemic on May 25, 2020, Calvin Fulmore—one of Johnson's subordinate drivers—told Johnson his wife had tested positive for Covid, and Johnson directed him to quarantine at home pending his own test results. [ECF No. 1-1, ¶¶ 9, 10.] About a week later, Fulmore told Johnson that his test results came back positive. *Id.* ¶ 12. In accordance with company policy, Johnson alerted his supervisor, Terminal Manager Jerry McCabe, that Fulmore had tested positive for Covid and remained quarantined at home. *Id.* ¶ 13. Johnson claims he told no other employee of Fulmore's sickness. *Id.* ¶ 14.

Yet the next day Fulmore emailed Sharlene Herbert, the Sumter facility Office Manager, complaining that the news he tested positive for Covid had reached the other drivers without his permission. [ECF No. 29-2, at 2, 10.] Within minutes of receiving Fulmore's email, Herbert responded and asked him to call her. *Id.* About forty minutes after Herbert's response, and presumptively after a phone call, Fulmore sent another email conveying that his wife had contacted

---

deficiency contained in the declaration. Thus, the court grants Builders' Motion, ECF No. 48, and considers the testimony in the declaration, though in a light most favorable to Johnson, the nonmovant. *See HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996).

a lawyer who wanted to investigate but he understood Herbert was "already working on it[.]" *Id.* Following an investigation conducted on the same day as Fulmore's complaint, Builders determined Johnson shared Fulmore's health information and Builders gave Johnson a written disciplinary warning. *Id.* at 3, 12.

After returning to work following his quarantine, Fulmore was assigned a different, older truck and a new route by either Johnson or Richard Holtz, another dispatcher. [ECF No. 41-3, Daugherty Depo., p. 29:5–7.] After a week of driving this new route, Fulmore submitted his resignation to Herbert, claiming Johnson had retaliated against him by taking away his new truck and assigning him an old truck and giving him a worse route. [ECF No. 41-9, at 2.] Fulmore claimed he could not "work in peace around" Johnson and that Johnson's actions spurred his resignation. *Id.* Again, Builders investigated Fulmore's complaint and concluded Johnson had, in fact, retaliated against Fulmore. [ECF No. 48-1, at 4–5.] Johnson met with other management personnel on July 1, 2020, to discuss his actions toward Fulmore. [ECF No. 41-1, Johnson Depo., p. 125:2–14.] The next day, McCabe fired Johnson, citing the alleged retaliation against Fulmore. [ECF No. 41-10, at 2.]

Following his termination, Johnson sued in the Court of Common Pleas of Sumter County, South Carolina alleging two causes of action: race discrimination in violation of Title VII and defamation in violation of South Carolina state common law. [ECF No. 1-1 ¶¶ 29–45.] Builders timely removed the action on August 13, 2020, asserting federal question and supplemental jurisdictional bases. [ECF No. 1.] After full discovery, Builders moved for summary judgment on both of Johnson's claims. [ECF No. 29.] Johnson filed his reply, abandoned his Title VII claim, and asked the court to remand the defamation claim to state court. [ECF No. 41.] Builders filed a Reply, asking the court to retain jurisdiction over the defamation claim and reaffirming its request that the court enter judgment on both claims. [ECF No. 43.]

United States Magistrate Judge Paige J. Gossett filed her Report and Recommendation on July 14, 2022, recommending the court retain jurisdiction over the defamation claim and enter judgment for Builders on both of Johnson's claims. [ECF No. 45.] Johnson filed objections to the recommendation, ECF No. 47, and Builders replied in opposition, ECF No. 49. Thus, the matter is ripe for resolution.

## REVIEW OF A MAGISTRATE JDUGE'S REPORT

The magistrate judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The court is charged with making a de novo determination of only those portions of the Report that have been *specifically* objected to, and the court may accept, reject, or modify the Report, in whole or in part. 28 U.S.C. § 636(b)(1). Without any objections, the court need not explain its reason for adopting the Report and must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (citing Fed. R. Civ. P. 72 advisory committee's note).

"An objection is specific if it 'enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute.'" *Dunlap v. TM Trucking of the Carolinas, LLC*, No. 0:15-cv-04009, 2017 WL 6345402, at *5 n.6 (D.S.C. Dec. 12, 2017) (citation omitted). A specific objection "requires more than a reassertion of arguments from the [pleading] or a mere citation to legal authorities." *Sims v. Lewis*, No. 6:17-cv-3344, 2019 WL 1365298, at *2 (D.S.C. Mar. 26, 2019). It must "direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). Thus, "[i]n

the absence of *specific* objections . . . this court is not required to give any explanation for adopting the recommendation." *Field v. McMaster*, 663 F. Supp. 2d 449, 451–52 (4th Cir. 2009).

## DISCUSSION

Although initially styled as an employment action, that is no longer the case. In response to Builders' summary judgment motion, Johnson stipulated to the dismissal of his Title VII claim. [ECF No. 41, at 8.] In fact, Johnson explicitly conveyed he "does not object to the Magistrates [sic] Report and Recommendation as to his race discrimination claim" in which the magistrate judge recommended that this court should grant summary judgment because Johnson conceded the claim. [ECF No. 47, at 1 n.2.] Because Johnson does not object to that recommendation, and the court finds no clear error in that recommendation, the court adopts the Report's recommendation and grants summary judgment for Builders on Johnson's Title VII claim. *See Diamond*, 416 F.3d at 315 (applying a clear error standard to a recommendation without objections).

Now, two questions remain for the court to answer. First, should the court adopt the magistrate judge's recommendation and retain jurisdiction over Johnson's state law defamation claim? Second, if the court does retain jurisdiction, should it adopt the magistrate judge's recommendation and grant summary judgment in Builders' favor? The answer to both questions is yes.

**I. The court exercises its discretion and retains jurisdiction over the defamation claim.**

The court must first resolve the jurisdictional issue. In her Report, the magistrate judge recommends the court retain jurisdiction over the defamation claim because of the straightforward and routine nature of the claim. [ECF No. 45, at 4 (citing *Funderburk v. S.C. Elec. & Gas Co.*, 406 F. Supp. 3d 527, 534 n.6 (D.S.C. 2019) *aff'd sub nom. Funderburk v. CSX Transp., Inc.*, 834 F. App'x 807 (4th Cir. 2021); *Hall v. Greystar Mgmt. Servs., L.P.*, 179 F. Supp. 3d 534, 538 (D. Md.

2016)).] Johnson objects to this recommendation and argues that remand of the state defamation claim is more appropriate. [ECF No. 47, at 5–7.] Responding to Johnson's objection, Builders argues that the court should follow the magistrate judge's recommendation and retain jurisdiction as the defamation claim arose out of the same facts as the now-resolved Title VII claim and there are no novel questions of state law for the court to decide. [ECF No. 49, at 9.] After reviewing the parties' arguments, the record, and relevant case law, the court exercises its discretion and retains jurisdiction over the defamation claim.

"Federal courts are courts of limited jurisdiction and, as such, may only hear and decide cases when given the authority to do so by the United States Constitution and by federal statute." *Bilbro v. Haley*, 229 F. Supp. 3d 397, 404 (D.S.C. 2017) (citing *In re Bulldog Trucking, Inc.*, 147 F.3d 347, 352 (4th Cir. 1998)). District courts most commonly have original jurisdiction pursuant to federal question jurisdiction and diversity jurisdiction. *See* 28 U.S.C. § 1331; 28 U.S.C. § 1332. If a district court has original jurisdiction over one claim, it may exercise supplemental jurisdiction over any otherwise jurisdictionally deficient claim. 28 U.S.C. § 1367(a). The ability to "decline to exercise supplemental jurisdiction in limited circumstances" such as when "the court dismisses the claims over which it has original jurisdiction" remains in the court's discretion. *ESAB Group, Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 394 (4th Cir. 2012) (citing 28 U.S.C. § 1367(c)).

While Johnson is correct that the court *could* refuse to exercise its supplemental jurisdiction, a review of the circumstances warrants retaining jurisdiction. To make that decision, the court reviews "factors that inform this discretionary determination" such as "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Because Johnson's defamation claim does not implicate issues of comity

6

and federal policy, it is not critical to the court's ultimate decision. *See Crosby v. City of Gastonia*, 682 F. Supp. 2d 537, 545 (W.D.N.C. 2010).

On the other hand, the factors of convenience and fairness to the parties and considerations of judicial economy strongly favor retaining jurisdiction. The case was removed more than a year and a half ago. Since then, the parties have conducted and finished discovery, filed a full round of briefing on Builders' summary judgment motion, and filed another round of briefing responding to the magistrate judge's Report. Puzzlingly, Johnson leans into these facts and even argues that they favor remand because "the state court will be able to efficiently decide outstanding issues of South Carolina law and direct this case to trial if necessary." [ECF No. 47, at 6.] Despite Johnson's best efforts to steer into the skid, the court is convinced that a remand would only further delay the resolution of this case and waste this court's and the state court's resources. Thus, to best use the courts and parties' resources, and to bring about a quick resolution of the case, the court exercises its supplemental jurisdiction over Johnson's defamation claim. Accordingly, the court adopts the magistrate's recommendation and overrules Johnson's objection.

**II. Builders is entitled to summary judgment on Johnson's defamation claim.**

Next, the court must determine whether Builders is entitled to summary judgment. The court must evaluate any allegedly defamatory statement and surrounding evidence to determine whether a triable issue of fact exists. But Johnson fails to identify a defamatory statement with any particularity. Instead, he vaguely alleges that Builders' employees and supervisors made "defamatory statements" about him surrounding his status of employment and purported disciplinary actions. [ECF No. 1-1, ¶¶ 36, 37.] Johnson bases his defamation claim not on any specific statements but on the fact that he was written up and terminated for actions he claims he did not take. But South Carolina law requires the publication of a false statement to sustain a defamation claim. *See Garrard v. Charleston Cnty. Sch. Dist.*, 838 S.E.2d 698, 709 (S.C. Ct. App. 2019) (quoting *West v. Morehead*, 720 S.E.2d 495, 498 (S.C. Ct. App. 2011)).

Here, no false statement was published. Johnson was written up and he was terminated. In its formal disciplinary forms, Builders indicated that Johnson was written up for sharing employee health information and terminated for retaliating against a driver. [ECF No. 29-2, at 12, 17.] And whether Johnson did or did not do those things, he was, in fact, terminated for allegedly doing them. Because the evidence unquestionably shows Builders provided the above rationale in its disciplinary forms, any communication relaying Builders' rationale is true and cannot sustain a defamation claim. *See Garrard*, 838 S.E.2d at 709.

Recognizing this shortcoming, Johnson ultimately narrows the court's focus to alleged conversations between Herbert and Fulmore, during which Herbert supposedly told Fulmore that Johnson was written up for sharing his personal health information and ultimately fired for retaliating against him. [ECF No. 47, at 12.] Again, not false information. And Johnson still provides no evidence detailing what statements Herbert made to Fulmore. Instead, Johnson provides a somewhat convoluted argument that because the write-up and termination were unfounded, any statements communicating their substance defame him by insinuation. *Id.* This argument does not persuade the court.

While mere insinuations can *sometimes* be actionable as defamation, plaintiffs still must provide evidence of the allegedly defamatory statements including the insinuation. *See Eubanks v. Smith*, 354 S.E.2d 898, 901 (S.C. 1987). Johnson provides *no details* about Herbert's supposed conversation with Fulmore. And even if the court infers such a conversation took place, the court simply cannot evaluate whether a genuine issue of material fact exists sufficient to send Johnson's defamation claim to a jury. *See Harris v. Tietex Int'l Ltd.*, 790 S.E.2d 411, 416 (S.C. Ct. App. 2016) (citing *McBride v. Sch. Dist. of Greenville Cnty.*, 698 S.E.2d 845, 853 (S.C. Ct. App. 2010) ("Without [plaintiff] identifying the specific statement or statements on which he bases his claim,

we cannot evaluate whether there existed a genuine issue of material fact as to the truth or defamatory nature of the statements."). Thus, the court finds Builders is entitled to judgment as a matter of law on Johnson's defamation claim.

## CONCLUSION

Having reviewed the Report, the objections, and the record before this court, and for the above reasons, the court adopts the Report, ECF No. 45, as modified and incorporates it by reference. Therefore, Builders' Motion for Summary Judgment, ECF No. 29, is **GRANTED**. The Clerk of Court is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

January 9, 2023
Columbia, South Carolina

/s/Sherri A. Lydon
Sherri A. Lydon
United States District Judge